White, J.
The distinction between the general property of the-wife and her separate estate is plainly marked; though the determining, in particular cases, to which class the property in controversy belonged, has given rise to many nice discriminations.
The goods, personal chattels, and estate of which the wife was-actually beneficially possessed at the time of marriage, in her own right, and such other goods and personal chattels as came to herdüring marriage, belonged to the first class. These, at common law, vested absolutely in the husband.
The separate property of a wife is that of which she has the exclusive control, independent of her husband, and the proceeds of which she may dispose of as she pleases; and its character as such,, in the absence of any statute on the subject, must be imparted to it by the instrument or title by which it is held. Petty v. Malier, 14 B. Mon. 246; 2 Bright’s Husband and Wife, 206, 210; 2 Story’s Eq. Jurisp., secs. 1381-1383; Clancy’s Husband and Wife, 262, 267.
Before proceeding further, it is proper to notice the fact, that the-counsel of the defendants in error claim that this case is governed by the act of April 3, 1861, “concerning the rights and liabilities-of married women” (58 Ohio L. 54); while the counsel for the- *471 plaintiffs in error insist that the rights of the parties remain the same as if that act had not been passed.
*The effect of the statute seems to be, to impress upon the property therein referred to, of married women, and which, without the aid of the statute, would not have been their separate property, that legal character.
If, before the passage of the act, the money given by Weston to Mrs. Taylor, and the other property in controversy, or the means with which it was purchased, were not her separate property, it is difficult to perceive how that act, as against her husband or his existing creditors, could make it so. Their rights would have been vested; and section five of the act provides, that it “ shall not affect any rights which may have become vested in any person at the taking effect thereof.”
In New York, it was held by the court of appeals, in Westervelt, Ex’r, v. Gregg, that the husband had a vested interest in a legacy which was bequeathed to his wife prior to the act of 1848, of that state, for the more effectual protection of the property of married women, although the legacy was not reduced to possession when the act took effect. And as the act contained no saving clause in favor of existing rights, it was declared that the legislature had not the power to deprive the husband of his rights to such legacy, and make it the sole and separate property of the wife; and that, so far as the act purported to do so, it violated the provision of the constitution of the state, declaring that no person shall be deprived of “property without due process of law.” 2 Neman, 203.
But we are not called upon, in this case, to examine the facts critically, with the view of determining the strict rights of the parties in respect to the money given to Mrs. Taylor.
The only question we have to determine is, whether the court erred in refusing a new trial, and in dismissing the plaintiffs’ petition.
For the purposes of this question, we assume the case to be, in the aspect most favorable to Mrs. Taylor, viz: that the money was either her separate property, or, at least, that the husband might, in view of the manner in.which it was acquired, and as against existing creditors, lawfully settle it on his wife, for her sole and separate use.
In this view of the case, the first question that arises is, as to the legal character of the transactions by which the real ^estate *472 in controversy, and which the plaintiffs seek to subject to the .payment of their judgment, was acquired.
Can this property be truly said to be the product or result of the investment of the money given to Mrs. Taylor by Mr. Weston?
It seems to us rather that it is the product of the manufacturing business established and carried on by the husband.
In the prosecution of this business, he had its entire management and control. Being skilled in the business, he worked at it himself, employed the hands, purchased stock, and superintended it in all its branches. True, it was carried on in the name of the wife, and Mr. Taylor assumed to be acting only as her “ agent and trustee.” This is the only feature that distinguishes it from ordinary cases of men carrying on business on their own account.
While courts of equity permit the husband to become trustee or agent of his wife, and, frequently, will charge him with that relaagainst his will, yet, they have invariably had a scrupulous regard to the rights of creditors, and have been the more scrutinizing, in view of the increased danger to creditors from property arrangements between husband and wife,' arising from the peculiar and confidential nature of the marriage relation. Equity penetrates to the substance of a transaction, and is governed by it, not its form. In a proper case, if there be no trustee appointed by the parties, it creates one; and, upon the same principle, if the character of trustee or agent be assumed, in an improper case, equity disregards it.
Disrobing, then, the transactions of all matters of form, and looking at the naked facts, it appears that Mr. Taylor, being skilled in the business, established a manufactory for the manufacture and repair of various, kinds of machinery, which was conducted under 'his sole charge for several years; that under his energetic, skillful, .and prudent management, the business was profitable; that after applying so much of the profits as was necessary to keep up the •establishment, he applied the remainder to the purchase, in his wife’s name, of the -real estate described in the petition, and to the purchase of a note of sixteen hundred dollars, said, at the time of the *the trial, to be worth twelve or thirteen hundred dollars ; that the entire accumulations from the business, above expenses, amounted to six or seven thousand dollars; and that in establishing and conducting the business, he had used the money of Mrs. Taylor, his wife.
*473 The foregoing is the substance of the transaction; and the ques tion is whether the title of Mrs. Taylor to the property thus acquired, is, in equity, unimpeachable by the plaintiffs, who are ante-cedent creditors of the'husband?
The property in controversy can, in no just sense, be said to be •either the income, increase, or profits. of the money given to Mrs. 'Taylor.
The money was used by the husband in carrying on the business, :and from the profits made therefrom the purchases were made; and it is pertinently argued by Mrs. Taylor’s counsel that there is no rule in such a case for the division of the profits. The consequence claimed, on her behalf, is that she should hold the whole of the property against the creditors, or, at the furthest, that the creditors ■should be allowed only what would be fair wages to the husband as an employe of the wife.
In regard to the last part of this claim, it may be remarked that -no such relation as employer and employe for wages was stipulated for, or contemplated between, the husband and wife. The testimony ■of Taylor, himself, is that “he told his wife, in the commencement •of the business, that he would do the best he could; support the family, spend what money he desired, and invest the residue for her benefit, in her name.” To this, she made no objection; and, in •speaking of the manner in which he did act, he says “ that he received the proceeds of the business, supported his family and himself therewith, spent what money he desired to, and with the surplus purchased ” the property,
It is further to be noted that the difficulty of making a division is in no way attributable to the creditors. They are entitled to have the property of the husband appropriated to the payment of his debts; and if the wife authorizes or permits her money to be so mixed with the products of the business and industry of her husband that it can not be separated, *this furnishes no reason why she should gain and the creditors lose thereby.'
Without entering into an exposition of the consequences that would follow the adoption of a rule sustaining the present claim of Mrs Taylor, it is sufficient to say, that we are satisfied that sound public policy, and the settled principles of law and equity alike forbid its adoption; and that where a wile thus suffers her own money to be employed by her husband, and blended with his earnings so that it can not be separated, though the business may *474 be conducted in her name, the most favorable attitude she could be allowed to assume, in a controversy with his creditors, is that of a-creditor in equity. At law she can, of course, have no standing as-a creditor.
The arrangement between the husband and wife, whereby he undertook to carry on business in her name and for her exclusive-benefit, was, in effect, an attempt to make a voluntary settlement of the products of his skill and industry in favor of his wife-; and the purchase of the property, and its conveyance to her, was but the carrying out of the arrangement.
The principle of the arrangement would be the same whether it embraced property which he had already acquired, or only his future acquisitions; and, if the arrangement be valid as against creditors for the period of about four years that elapsed from the time of its date to the time of the trial, it may be continued during the joint lives of the parties, if they so elect; and if the husband should survive the wife, no good reason is perceived why, if he should choose to do so, he might not prolozzg the arrangement for the benefit of her legal representatives.
It has been uniformly held that a voluntary settlement by an insolvent is void as against antecedent creditors, without regard to the intention with which it was made. Upon this principle the conveyance in question can not be upheld against the plaintiffs. 2 Bright’s Husband and Wife, 111, chap. 2.
The only remaining question, in this aspect of the case, is as to-the extent of the equity of the wife in the property. As the plaintiffs are, in equity, seeking to divest her of the *title, she is, as against them, entitled to the extent of her right to protection; and, as we have already remarked, the most favorable position she can claim to occupy is that of a creditor in equity of her husband, and as such entitled to her money and interest.
The judgment-will be reversed, and a new trial granted, and the cause remanded for further proceedings,
Scott, C. X, and Bay, Welch, and Brinkerhoee, XT., concurred.